## CIRCUIT COURT OF THE CITY OF RICHMOND

Adrienne D. Johnson

v.

Commonwealth of Virginia et al.

January 3, 1995

Case No. HE-1011-4

BY JUDGE RANDALL G. JOHNSON

This is a proceeding by a state employee for a determination of whether her grievance qualifies for a panel hearing pursuant to Va. Code § 2.1-114.5:1(E). By order entered October 28, 1994, the court held that the grievance did not qualify for a panel hearing. The matter is now before the court on the employee's motion to reconsider.

The employee, Adrienne D. Johnson, is an executive secretary with the Department of Medical Assistance Services (DMAS). On June 6, 1994, she filed a written grievance alleging that since September, 1992, she had been performing work at a higher grade level than her assigned grade level without being appropriately compensated or reclassified. She sought retroactive monetary compensation and retroactive grade reclassification. The agency denied her claim and also denied her request for a panel hearing.

On Johnson's appeal to this court, the agency argued that a panel hearing was not appropriate because the relief sought by Johnson was beyond the power of a panel to give. Specifically, the Employee Grievance Procedure promulgated by the Department of Employee Relations Counselors pursuant to Va. Code § 2.1-114.5:6 mentions back pay only with respect to cases of reinstatement of terminated or suspended employees. *See* Employee Grievance Procedure, revised July 1, 1992, at 6. Otherwise, no damages may be awarded. *Id.* DMAS also argued that a panel has no authority to order a grade reclassification since the same Employee Grievance Procedure reserves to management the "exclusive right" to establish position classifications. *Id.* at 1. As already noted, the court agreed with

DMAS and rejected Johnson's request for a panel hearing. I now believe that my prior decision was wrong.

The definition of "grievance" is set out in Va. Code § 2.1-114.5:1(A). It is as follows:

> A. *Definition of grievance.* — A grievance shall be a complaint or dispute by an employee relating to his employment, including but not necessarily limited to (i) disciplinary actions, including dismissals, demotions and suspensions, provided that dismissals shall be grievable whenever resulting from formal discipline or unsatisfactory job performance; (ii) the application of personnel policies, procedures, rules and regulations, including the application of policies involving matters referred to in subdivision B (iii) below; (iii) acts of retaliation as the result of utilization of the grievance procedure or of participation in the grievance of another state employee; (iv) complaints of discrimination on the basis of race, color, creed, political affiliation, age, disability, national origin or sex; and (v) acts of retaliation because the employee has complied with any law of the United States or of the Commonwealth, has reported any violation of such law to a governmental authority, or has sought any change in the law before the Congress of the United States or the General Assembly.

Subsection B of the same statute, as well as page 1 of the aforementioned Employee Grievance Procedure, lists matters which are the "exclusive right" of management and nongrievable, including, as DMAS points out, the "establishment and revision of wages or salaries, position classifications [and] general benefits . . . ." Clearly, however, these two provisions must be read together, and the "exclusive rights" set out in subsection B cannot be interpreted in such a way that would nullify an employee's right to grieve under subsection A. In this regard, the court cannot imagine that DMAS would argue that management's exclusive right to set salaries gives management the right to pay whites more than blacks, or men more than women, or Protestants more than Catholics. Nor can the court imagine that DMAS would argue that employees affected by such action are precluded, because of subsection B's statement of non-grievability, from filing grievances challenging such action.

Similarly, the court would not expect an agency to argue that the agency's exclusive right to establish general benefits gives such agency the

right to give better benefits to blacks, or to women, or to Catholics, or that grievances could not be filed if better benefits were so awarded. The same is obviously true with regard to position classifications. In other words, the "exclusive rights" reserved to management under Va. Code § 2.1-114.5:1(B), as well as the nongrievability of management actions taken pursuant to those exclusive rights, cannot legitimately prevent employees from filing grievances concerning such rights and actions if such grievances allege discrimination based on race, or sex, or creed, or some other impermissible factor; that is, a grievance specifically permitted by subsection A of the statute. Indeed, any argument to the contrary is simply untenable.

Moreover, there is nothing in subsection A of Va. Code § 2.1-114.5:1 which makes complaints of discrimination any more grievable than any of the other grievable items set out in that subsection. It must follow, then, that the "exclusive rights" and "nongrievable" matters of subsection A must give way to those other grievable items as well. Thus, just as an agency's position classifications cannot be made on the basis of race, sex, or creed, neither can they be made as a part of disciplinary action or retaliation, at least not without being subject to a possible grievance proceeding. The same must be true for each of the other items contained in subsection A's definition of grievance as well.

Here, Johnson complains that she was required to perform work in a higher grade level than she was classified; that is, her work assignment was not in accordance with applicable personnel policies, procedures, rules, and regulations, something which is specifically contained in the Code's definition of grievance. Section 2.1-114.5:1(A)(ii). Just as the other items in subsection A limit management's exclusive rights under subsection B, so, too, does this one. Specifically, it gives Johnson the right to file a grievance and to present that grievance to a panel.

The court also rejects DMAS' argument that since her job has already been audited and re-audited by DMAS' personnel division, which found that she was properly classified, it is useless to convene a panel to evaluate those audits or possibly order a new one. It is not up to DMAS or even this court, however, to make the final factual determination about Johnson's job. That is the function of the panel. Indeed, if DMAS' argument is correct, then any grievant could be prevented from submitting his or her grievance to a panel simply by the agency having its personnel department investigate and find no violation. Obviously, this is not the law. While DMAS' audit and re-audit may be appropriate items of evidence to be

considered by the panel, it is still up to the panel to decide whether relevant personnel policies, procedures, rules, and regulations were properly applied to Johnson.

Finally, the court rejects DMAS' argument that since a grievance panel has no authority to award back pay in the absence of reinstatement, Johnson cannot receive the relief she seeks, again making a panel hearing a useless act. First, back pay is only one item of relief sought by Johnson. She also asks that she be reclassified. While DMAS again argues that classification of employees is an exclusive right of management and outside a panel's power to award, I am not convinced that such argument is correct. As already pointed out, the exclusive right referred to by DMAS is not absolute, and I am not sure that there is anything in the Code or the Employee Grievance Procedure which would prevent a panel, in an appropriate case, from ordering an agency to reclassify an employee. Likewise, while the Employee Grievance Procedure does specifically preclude a panel from awarding "damages," the only reference to "back pay" is as follows:

> When a panel directs reinstatement, the panel has the authority to award full, partial, or no back pay for the period of separation. An award of back pay shall be offset by interim earnings the employee received during the period of separation.

I am unwilling to say, without the benefit of a panel decision, whether a panel may award back pay only when reinstatement is ordered, or if reinstatement is simply one circumstance in which back pay may be ordered. Because any opinion in this regard would, at this point, be advisory only, no opinion is given. A panel hearing, however, is appropriate.